InsLEY, J.
Sometime in April, 1862, the plaintiff, intending to violate the blockade at the entrance of the river Mississippi, shipped on the-schooner Cora, at the port of New Orleans, a cargo of stores and cotton, consigned to Cahuzae Brothers, at Havana, where she arrived safely, and landed her cargo without accident.
Previous to the departure of the Cora from New Orleans, the defendant, *91 who was the friend and correspondent of the consignees of the plaintiff’s cargo, undertook, at the special instance and request of the plaintiff, to act as the intermediary between him and that commercial house, to which he undertook to communicate the plaintiff’s instructions, as to the disposal of the cargo.
These instructions, which were verbal, were to sell at Havana all the cotton, except one hundred bales, if the Havana market proved as fair as the European one; to reship the one hundred excepted bales, which were of superior quality, to a port in England for sale there, and to transmit the proceeds of the cotton intended for sale in Havana, if sold there at all, to the banking house of Baring Brothers & Co., in London or Liverpool.
The defendant, instead of transmitting these precise instructions to Cahuzac Brothers, left it discretionary with them to sell the whole cargó at Havana, if it should prove equally as advantageous as a sale in a European port; and in the event of a sale there, the consignees were to transmit the proceeds to Europe in No. 1 exchange.
Cahuzac Brothers, under these discretionary powers, sold in Havana all the cotton shipped to them on the Cora by the plaintiff, and they transferred a part of the proceeds of sale to the captain of the Cora, which was duly received by the plaintiff.
The balance of the proceeds was transmitted by Cahuzac Brothers, in their own bill of exchange, drawn in three parts on Fred Hutt & Co. London, to Cahuzac Freres, at Paris, France, to be credited to the plaintiff, but subject to the order of the defendant. The defendant, having subsequently paid the amount of the bill of exchange to the order of the plaintiff, in the manner which will be hereinafter explained,, had the proceeds of the bill, the first and second of which had been sent to Europe and paid, transferred to his own credit on the books of Cahuzac Freres.
The third of the set of exchange, as was customary in Havana, was forwarded thence to New Orleans, in order to show that the remittance of the balance of the proceeds of the cargo had been made to Europe, but this third never reached the party to whom it was addressed, but fell into the hands of Maj. Gen. Butler, then in command of the Department of the Gulf, who, exonerating the defendant, from all blame in the transaction out of which the bill proceeded, compelled the plaintiff, whom he deemed the culpable party, to pay it — which he did, by an order on the defendant to that effect.
The amount of the bill of exchange thus paid for the plaintiff by the defendant was eleven thousand six hundred and ninety dollars, refunded him in the manner before stated, and it is to recover from the defendant this precise amount, as the balance of the proceeds of the consignment by the Cora, that the plaintiff, attributing the seizure of it by General Butler to the defendant’s non-observance of his instructions, that the present suit is instituted.
The shipment by the Cora for Havana, contemplated and actually involved a breach of the blockade, and if this violation was so illicit as to render void any contract growing out of it, the plaintiff would have no ¡standing in court.
By the law of nations, which we deem the test in such cases as this, a *92 violation of a blockade is not deemed a personal offence. It only affects the vessel and cargo, and unless they are captured in delicto, the offence is purged. This is the doctrine now well settled by modern authority, English, Continental and American. 3 Wheat. 550. 2 Gallison, C. C. B.210. 1 Kent’s Commentaries, 6 ed. 151. 8 Pet. 495, 519. And it was recognized by the United States civil and military authorities, in the examination of cases of breaches of blockade during the late rebellion, one of which, to which we shall refer, was identical with the plaintiff’s case, as to the principal facts and principles involved.
We cannot, therefore, on that account, dismiss the plaintiff’s action.
The sale of all the plaintiff’s cotton in Havana, is not in itself his cause for complaint; for, had all the proceeds of that sale come safely into his hands, it is evident the present suit would never have been instituted.
It was the transmission hither of the third of exchange on Fred Hutt & Co., which, by furnishing General Butler a clew to what he deemed a breach of the blockade by the plaintiff, and thereby divesting the balance of the price of the Havana sale, represented by the bill of exchange, from the plaintiff’s control to that of the general’s, which occasioned the present suit.
The claim which the plaintiff is now pressing against the defendant, is for the balance of the proceeds of his cargo sold in Havana.
This proceeding, with full knowledge that that sale was made under the defendant’s instructions, ratified that sale with all its incidents, concurrent and sequent, and made that contract his own. Surgat v. Potter, 12 M. 368.
And the ratification, as between the plaintiff and defendant, dated back to the time of .the sale. 2 A. 24, 812.
This Court has held that “the agent, who disobeys instructions, renders himself responsible to his principal for the Consequence of his acts, but' has also held, under another principle of the law of agency, that whenever an agent has committed a breach of orders, and a principal with a full knowledge of all the consequences adopts his acts, even for a moment, he will be bound by them, and it is not necessary that such an assent should be express; it may be inferred from the conduct of the principal. Ward & Co. vs. Warfield, 3 A. 464. Flower vs. Downs, 6 A. 540.
And the principal’s acts will be liberally construed in favor of a ratification. Flower vs. Jones, 7 N. S. 143.
By this ratification, the plaintiff’s release, when he paid the amount of the bill by the plaintiff’s order to Gen. Butler, if conditional, became absolute.
But apart from the release, if by the diversion of the proceeds of the bill of exchange paid by the plaintiff’s order to Gen. Butler, he, the plaintiff, has suffered damage, he cannot on that account fasten or. the defendant a responsibility therefor, as the plaintiff had the means within his reach to avert any loss in consequence of the military interference. Had he availed himself promptly of the intervenient agency of tbe United States commissioner, specially delegated by the government for the investigation and adjustment at New Orleans of the class of cases in which his was embraced, he would have recovered every dollar of the *93 money extorted from liim, as did the witness Kennedy, whose predicament was precisely that of his own.
Upon every principle of law and equity, we consider the defendant entitled to a judgment in his favor.
It is therefore ordered, adjudged and decreed that the judgment of the Districe Court be affirmed, at the costs of the appellant.
Petition for a Rehearing, by plaintiff and appellant. — Your Honors consider it established that Szymanski’s instructions to Plassan were not carried out. You say: “These instructions, which were verbal, were to sell at Havana all the cotton except one hundred bales, if thé Havanh, market proved as fair as the European one, to reship the one hundred excepted bales, which were of superior quality, to a port in England, fur sale there, and to transmit the proceeds of the cotton intended for sale, in Havana, if sold there at all, to the banking house of Baring Brothers & Co., in London or Liverpool.
“ The defendant, instead of transmitting these precisé instructioná to Cahuzac Brothers, left it discretionary with him to sell the whole cargo at Havana, if it should prove equally as advantageous as a sale in a European port, and in the event of a sale there, the consignees were to transmit the proceeds to Europe in No. 1 exchange.”
We submit that it is the duty of a factor to obey implicitly the instructions which he receives from his principal, and that if he disobeys them in any particular, he is responsible for any and aE damages which may grow out of his disobedience.
This proposition is elementary, and will not, we presume, be disputed.
If we are correct in this, then the judgment should have been in our favor.
Two propositions were submitted to the Court by the defendant.
The first was that the contract between the parties was an illicit one, and could not therefore be enforced. ,
The second was that the instructions given by plaintiff to defendant were complied with. ■ ' '
Your Honors decide that the contract was not an Elicit one; that the instructions were not compEed with.
_ And you render a judgment in favor of the defendant. Your judgment is based upon the acquiescence of the plaintiff, as to the disposition made of the cargo of the Cora, a point not made in the • pleadings, and not alluded to in the argument or in the defendant’s brief.
We respectfully submit that there is no evidence in the .record to show that we ever acquiesced in the acts of the defendant, with reference to the proceeds of our property after they came into his hands, or that we ever did anything which would authorize the construction that we intended so to do.
Our instructions to him were to cause our propertyto .be shipped to Liverpool, and there to be sold, provided the demand ,a,t that port was better than it was in Havana; to ship a certain quantity thereof to that port, under all circumstances, and to cause the proceeds thereof to be placed to our credit with the house of Baring, Bros. & Co., m England.
Instead of complying with these instructions, he directed the house to which the cotton was entrusted to use its own discretion, and in case of sale in Havana, to remit the proceeds to Europe in No. 1 exchange. Thus taking particular care not to have it placed to our credit in Europe; it was to be placed to his own.
Our property was sold, and a portion of the proceeds thereof (£2¡338 13) was sent to Europe for account of the defendant; it was received by him, and the record shows that it is now in his possession.
To show Plassan, as it is stated, that his instructions had been carried out, the consignees in Havana forwarded to him a third of exchange, drawn by the consignees on Ered Hutt & Co. of London, for the amount iibove stated, This third of exchange fell into the hands of Gen, Butler, *94 •who forced the defendant to pay it; that is, he forced him to pay §11,690 in Citizens’ bank bills for it.
Your Honors will please bear in mind that the third of exchange in question was sent to, and drawn in favor of, the defendant; and that the plaintiff, upon its face, had no interest in it whatever; a fact which does not seem to have been so considered by the Court. You say;
“It was the transmission hither of the third of exchange on Ered. Hutt & Co., which, by furnishing Gen. Butler a clew to what he deemed a breach of the blockade by the xilaintiff, and thereby diverting the balance of the price of the Havana sale, rexiresented by the bill of exchange from the .plaintiff’s control to that of the general’s, which occasioned the present suit. The claim which the plaintiff is now pressing against the defendant is for the balance of the jiroeeeds of his cargo sold iu Havana.
“ This proceeding, with full knowledge that that sale was made under the defendant’s instructions ratified that sale, with all its incidents concurrent and sequent, and made that contract his own.”
We admit, that if the proceeding alluded to had been adopted, with full knowledge that the sale was made under the defendant’s instructions, we would have no case. We would then have ratified the defendant’s instructions, and made them our own. This, we submit, is the vice in the judgment. There is no evidence in the record that we ever, by word or deed, ratified his instructions. The ground which Your Honors seem to stand the ratification upon is, that plaintiff paid the third of exchange referred to, or that it was paid by plaintiff’s order. You say: “ By this ratification, the plaintiff’s release, when he paid the amount of the bill by the plaintiff’s order to Gen. Butler, if conditional, became absolute.”
Now the plaintiff never paid the third of exchange, or ordered it to be paid by the defendant. The circumstances of this payment, as they appear from the record, are as follows:
This third of exchange was drawn in favor of the defendant; it was of no value to any one but lie;, in the possession of anyone else, it was worthless; he alone could dispose of it. It came into the hands of General Butler, who demanded payment from the defendant, and who compelled him to pay it. This he could, and doubtless would, have done, with or without the x>laintiff’s consent. The plaintiff was an entire stranger in the transaction. He could have declined saying a word upon the subject, and have left the defendant to fight his own battle with the general;, and this he could have done most conscientiously, for up to the time of the payment of the bill, and up to the present day, there is nothing to show that this bill referred to the proceeds of the Oora’s cargo. But the defendant was in x>eril of imprisonment; he had either to pay the amount demanded of him or go to prison. In his distress he called upon the plaintiff, and told him that the bill belonged to him; that he .had no interest in it; that it was the proceeds of his cargo, and he urged him, no doubt with that eloquence which comes natural to any man who is praying to be kept out of prison, or entreating not to be made to pay money, to come to his relief. He does so. He says the bill belongs to him and that he will not have the defendant made to suffer on his account, and he agrees that he will make no claim upon the defendant on account of the draft. But at the same time that he shields the defendant from General Butler’s prison, he protects himself, for while he agrees to make no claim upon the defendant for tho bill, he says: “ The transaction has been done contrary to my orders, and I make no claim for the proceeds thereof, etc.” If the transaction was done contrary to his orders, then the release was without consideration and was void. The acceptance by the defendant of this condition was an acknowledgment on his p>art that the plaintiff’s instructions had been disobeyed. His letters show that he was the party who disobeyed them, and surely he must be responsible for his own acts. We submit, therefore, that there has been no ratification on the part of the plaintiff, and that there is error, in this regard, in the judgment.
The cases.to which the Court refers, 12 Martin, 368, 2 A. 24, 81.2, are *95 all cases where the actions were brought after full knowledge of the facts on the part of the plaintiffs, and after their formal acquiescence. Admitting, however, that we acquiesced in the sale of the property made contrary to our instructions, we still have a right of action for the proceeds of the sale. Surely, because we do not complain of our property being sold contrary to our instructions, we are not barred from complaining that the proceeds of the sale have not been sent where we ordered them to be sent.
Your Honors are of the opinion that restitution of the sum paid would have been made if it had been demanded of the United States authorities. Doubtless. But who was to make the demand? The Court say the plaintiff. We submit that it should have been made by the defendant. The bill was in his name; it was seized as his property; it was paid by him. He was therefore the only person who could have claimed restitution. The record shows that he offered the plaintiff to demand its return, but this offer was coupled with the proviso that he, defendant, should be released from all obligation towards the plaintiff. He would have been placed in a nice box if he had accepted this proposition. First, the defendant would have been released because the plaintiff believed that he had carried out his instructions; secondly, he would have been released because he had applied for restitution. He would then have given up his hold on the correspondent in Havana and the shipper, and thus be without his property and without a remedy. The fact that he refused this proposition is the best evidence that he considered his release a conditional one.
We now beg to call Your Honors’ attention to another branch of the' case.
Assume that the £2,338 13, the proceeds of property placed in his hands for sale, belonged to Szymanski, and that they were in the possession of S. Plassan as his agent. Now assume that Plassan had to pay for account of Szymanski $11,690 in Citizens’ Bank notes. When he settles with Szymanski what is to be the basis of his settlement? Is he to pay the number of pounds sterling, dollar for dollar in a depreciated currency? or is he not bound to account to him for the value of the sterling?
It is established by the evidence that the money paid to General Butler wa3 paid in Citizens’ Bank notes. It is established by the testimony, that sterling was worth more than fifty per cent, premium over the notes in which the payment was made. And it is established that at the time of the trial of this cause that very sterling was in the possession of. the defendant. It must, therefore, be presumed to be there still. Now whose property is it? Szymanski’s. £2,338 are equal to $11,339 30, according to the currency law of the United States, considering each £ to be worth $1 85. According to the value of gold in the market at the time of the transaction, this sterling was worth over $18,000 in Citizens’ Bank notes. Plassan has ;paid $11,690 in these notes, and there remains then a balance of $6,318 in his hands. In other words, Plassan is enabled to make a clear profit of over $6,000 as the agent of a man whose-instructions he violated from the commencement. Even now, if, Your Honors were to order the defendant to place the plaintiff in possession ^ of £2,338 upon his paying him $11 690, Plassan would, lose nothing and Szymanski would recover the balance of his property, to-wit: $6,318. We think that he is bound to us for the whole amount we claim, but we respectfully submit that, under any view of the case, we are entitled to the last amount.
Your Honors are pleased to say that “ upon every principle of law and equity we consider the defendant entitled to a judgment in his favor. ” We respectfully submit that the equity in this case is entirely in our favor. We could have allowed the defendant to go to prison or pay the amount demanded of him, at his option; we did not do so because we believed that he was about being punished for no fault of his own, and we stood between him and punishment. What were the. facts? We ■Jiave shown that he disobeyed our instructions; that he caused our *96 money to be placed to liis own credit instead of ours, thus talcing the chance of settling with us if we ever called upon Imn for a settlement, and if not of being in a position of having the whole amount to himself; we have shown that he has been enabled to get a title to our property which came into his hands as our agent, worth then, and now, over §18,000, by paying §11,690 for it, and that he must therefore now have over §6,000 of our money in his hands. There may be some inexorable rule of law, of which we are ignorant, which Tour Honors in obeying takes away our rights, but we respectfully submit that, if equity means fair dealing, the justice of the case is with us.
Iuslev, J.
The plaintiff’s claim for premium on exchange, set up in this Court for the first time on the rehearing, is not sustained satisfactorily by the evidence; and as we can perceive no error in the judgment first pronounced by us, the rehearing is therefore refused.